**UNITED STATES of America**

v.

**Alphonso CAIN, Appellant.**

**No. 23949.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 15, 1971.

Record Remanded April 27, 1971.

Decided April 13, 1972.

Rehearing Denied May 31, 1972.

Mr. Robert T. Gaston, Washington, D. C. (appointed by this court), for appellant.

Mr. Philip L. Cohan, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry and David C. Woll, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and MacKINNON and WILKEY, Circuit Judges.

PER CURIAM:

Two men with a truckload of liquor were hijacked on December 31, 1968. They were released about 3 P. M. The driver of the truck was never able to identify any of the robbers, but his helper, Best, did identify Alphonso Cain by photographs shown him at his home the day after the crime and by photographs which were shown him at work about a week later. Following his conviction, Cain appealed and we remanded for an additional hearing on identification. The case is now before us after the additional record made on remand.

I

At trial, as part of the Government's case in chief, Best testified that on the day of the crime, December 31st, following his release about 3 P. M., he first

went through ten or eleven books of pictures (about 50 to 60 in each book—500 or 600 total photographs) at the Robbery Squad office:

Q. Did you see a lot of pictures on that particular day?

A. Yes, sir.

Q. Were you able to see the person that you now identify in those pictures at that time?

A. Yes; I saw one photo of him.

Q. I am speaking now of the time you were at Police Headquarters on that particular day?

A. Yes. (Tr. 52).

This last question indicated that the prosecutor had some reservation about Best's answer that he had made a photographic identification *on the day of the crime*. A few moments later, however, in the continued interrogation about his identification of Cain from the photographs shown him at his home the day *after* the crime, Best testified as follows:

Q. Well, did there come a time that the police showed you some more pictures?

A. Yes, they showed me some more.

Q. Where was that?

A. At my house.

Q. Now, who showed you these pictures, do you recall?

A. Detective Cain.

Q. Were these pictures of *different* subjects?

A. Yes, they was.

Q. At this time were you able to identify anyone as one of these highjackers?

A. Yes; I identified one picture.

Q. That was the same person you identify in court today?

A. Yes, it is.

Q. *Was that the first time that you made a photo identification of this defendant?*

A. *Yes.*

Q. *This was at your home?*

A. *Right.*

Q. Now, did there come a time subsequently that additional pictures were shown to you?

A. Yes, about a week later on the job.

Q. Were these additional pictures?

A. Yes.

Q. *Were you able to identify any additional persons?*

A. *No; I identified the same picture again.*

Q. *You identified the same person?*

A. *Yes, sir.* [This refers to what is hereafter referred to as the second identification.]

Q. *Are you positive of your identification today?*

A. *Yes.*

Tr. 52–53 (emphasis added).

Defense counsel was not satisfied with the correction in the testimony with respect to the identification on the day of the robbery and so on cross examination he interrogated Best as follows:

Q. You also testified, I believe, that the first pictures that you were shown were shown to you of possible suspects at the police station?

A. Yes.

Q. These were shown to you before another set was shown to you at your home?

A. Yes.

Q. You stated that you identified one picture at the police station, is that correct?

A. Yes, sir.

Q. Now, was that picture that you identified of this defendant?

A. Yes, it was.

Q. When was *the first time* that you saw a picture of this defendant, Mr. Best? Was that at the police station or at your home?

A. *Both places.*

Tr. 55–56 (emphasis added).

The police officer (Cain) later testified that he first [1] showed photographs to Best at his home on the first of January 1969, the day *after* the robbery. At that time he showed him *seven* pictures (Tr. 96). This is covered by the following colloquy:

A. I showed them to Mr. Best at his home on the First of January, 1969 [the day after the robbery].

Q. Was he able to pick out any picture as one of the persons who highjacked him?

A. He picked out the defendant's as *strongly resembling* one of the subjects involved.

Q. Was that the only picture that he picked out?

A. Yes, sir.

Q. Now, after this identification, did you show him additional pictures to see if he could identify any other subjects?

A. Yes, sir; I showed him pictures at his place of business.

Q. Did he pick any other suspects out?

A. No, sir.

Tr. 97 (emphasis added).

Thus the police officer testified that the identification of appellant by Best was not made at the police station on the day of the robbery but was made at Best's home the day after the robbery and later at his place of business.

On remand Best testified that he did not identify Cain from the photographs at the police station. He thus in effect corroborated the testimony he gave at the trial that "The *first time* . . . [he] made a photo identification of this defendant" was at his (Best's) home (Tr. 52–53, emphasis added). This testimony also corroborated that of the police officer at trial.[2]

The record at the trial indicates an inconsistency in Best's statement to the extent indicated above.

## II

Best was the only person to identify Cain.[3] He made a positive in-court identification (Tr. 45) and testified that he made a positive photographic identification from seven photographs, saying "I told them that was the one right there." I said, "This picture." (Tr. 11) "That was him" (Tr. 9). There was also uncontradicted evidence that appellant on the day of the hijacking had rented the truck which the hijackers

---

1. The dissent claiming to rely solely on the *officer's (Cain's) testimony at trial*, questions the statement that the police officer (Cain) "first showed photographs to Best at his home . . . on the day after the crime." The dissent seems to gain some comfort from the assertion that the officer (Cain) did not *characterize* it as a "first showing" (p. 714, dissenting opinion). The statement that it was a "first" showing by the officer, however, is fully supported by the following testimony from the record *at trial*: Officer Cain testified that he was assigned to the case on January 1, 1969 (the day after the crime); that he quickly discovered that the truck used to transport the stolen liquor had been leased to the defendant Cain; he then obtained a picture of Cain from the Identification Bureau and with pictures of six other men he "showed them to Mr. Best at his home on the First of January, 1969" (Tr. 95–87). This

*is* the officer's testimony before the jury. It fully supports the statement that the officer (Cain) *first* showed photographs to Cain at his home on January 1st. That the officer did not personally so characterize his testimony is immaterial. He was not called upon to do so. What is material is that he did testify to facts from which it must be concluded that such was the *first* showing by him.

2. *Id.*

3. Cain took the stand but failed to deny participation in the crime. His only testimony related to a lineup (apparently involving another crime where he may have been only a stand-in) in which he participated (Tr. 108–112). However, a lineup for the crime here charged was never held because Cain suffered a serious accident to his face before one could be arranged (Tr. 107).

used to carry away the hijacked liquor. He had rented the truck in his own name. He admitted by stipulation that the signature on the car rental contract was his. Best identified photos of the rental truck as being similar to that of the truck used in the hijacking. This truck had been located by the police through a number that Best had observed as being stencilled thereon. It is also noteworthy that a subsequent police report, based on appellant Cain's call to the police alleging that the truck had been stolen from him, indicated that it was not stolen until after the hijacking had taken place.

### III

It is now suggested that we consider reversing the conviction because on remand Best denied that he had identified a picture of appellant from "lots of pictures" at "Police Headquarters" the evening of the robbery.[4] In dealing with this question we must also note that within a very few moments later, after Best so testified on direct examination at trial, he corrected his earlier statement by testifying that the "first time"

he made a "photo identification of this defendant" was at the witness's home the day *after* the robbery. That flat contradiction of his statement made a few moments earlier should have straightened out the matter and it did except for his answer on cross examination. On cross examination, when Best was asked "the first time that you *saw* a picture of this defendant . . . at the police station or at your home?, he replied equivocally "Both places." Defense counsel, for some reason, then elected not to proceed further with the interrogation on this point. Our dissenting colleague would convert this single equivocal answer into grounds for a new trial. We do not consider that it rises to that dignity. It is also significant that police testimony, both at trial and on remand, corroborated Best's statement that he *first* made a photographic identification on the day after the robbery.[5]

### IV

In this state of the record a great deal depends upon the use made of the questioned testimony in oral argument.[6] A

---

4. The dissent attacks what it terms as "the court's basic position of disregarding Best's testimony of an identification the evening of the crime" by pointing to Best's testimony, *not at trial*, but at the preliminary hearing (App. Br. 9–11). The transcript of the preliminary hearing, however, was not introduced in evidence at the trial. But it was available for admission had counsel decided to use it. Thus, it was not newly discovered evidence and it was not part of the trial record. Thus, it need not be considered in passing on the legality of the trial. A portion of such testimony, however, was adduced at the remand hearing (Tr. 15–16) and, after consideration of all the testimony, was rejected by the court as a basis for new trial (Tr. 50). So what the dissent amounts to in this respect is an expression of dissatisfaction with the trial court's findings on remand after an evaluation of all the testimony. We, however, find the decision of the trial court in this respect to be within its permissible discretion. The dissent also attempts to make a point out of the fact that the Government at trial did not "disclaim" that an

identification had taken place on December 31st. This fact carries no weight since neither party was contending that any identification had taken place on December 31st. There was thus no reason at trial to disclaim such contention. Actually, the Government's responsibility in this respect was satisfied when it elucidated testimony from its own witness "that the first time [he] . . . made a photo identification of this defendant" was at his home on January 1st (Tr. 52–53).

5. Note 1, *supra*.

6. The dissent attempts to ignore the jury arguments of both counsel, and to justify the position it takes on this appeal, by asserting that arguments of counsel "are not a part of the record on appeal." Dissent, p. 715. This is incorrect. The original records rule is applicable:

> *Composition of the Record on Appeal.* The original papers and exhibits filed in the district court, *the transcript of proceedings*, if any, and a certified copy of the docket entries prepared by the clerk of the district court shall constitute the

review of the jury argument of both counsel discloses that neither counsel referred to any photographic identification at the police station. Both counsel only referred to the single identification at Best's home when he picked out appellant's picture from *seven photographs* as *"strongly resembling"* the robber. This January 1st identification was the only one with the "strongly resembling" earmark. All remarks by both counsel in final argument were directed to the photographic identification which had been made from *"seven* photographs" and to the effect that one picture *"strongly resembled"* one of the hijackers. The only photographic identification which had these characteristics was the one Best made on January 1st, the day *after* the robbery, at his home. No other photographic identification was referred to by either counsel in oral argument.

In final argument Government counsel stated four times that Best had made his identification from "seven photographs," and stated seven times that Best had identified the photograph of Cain as "strongly resembling" one of the hijackers. Defense counsel attacked the photographic identification six times as only "strongly resembling." Since the identification at home on January 1st was the only one from seven photographs and the only one in which Best had identified the photograph as "strongly resembling," it is obvious that it was the January 1st identification which was referred to by both counsel. Thus neither counsel referred to any other photographic identification in final argument. This indicates that neither counsel connected with the trial saw any point in the equivocal answer that the dissent now seeks on a cold record to magnify into grounds for a reversal.

Probably the best evidence that *defense counsel* interpreted the testimony

to indicate that the significant identification was made at Best's home is deducible from defense counsel's references in cross examination and final argument to the "strongly resembling" identification. On cross examination defense counsel framed his question as follows:

Q Now, when you were shown the photographs by the police and you picked out the one photograph, didn't you say that this photograph *strongly resembled* one of the men? Weren't those the words that you used?

A I don't remember saying that.

Q You might have said that?

A I might have. I don't remember saying it.

Tr. 57, emphasis added.

Then in the final argument to the jury, defense counsel stated:

So, to repeat, essentially the Government bases these seven felony charges against Mr. Cain on Mr. Best's identification of a photograph which he said *strongly resembled* the third man. I say this isn't enough. (Excerpts from final argument, p. 4)

All this indicates that the parties did not consider the testimony to be as confusing on identification as the dissent finds it. Under such circumstances the weight of the testimony was for the jury.

V

Probably the most conclusive demonstration that our dissenting colleague reads the remand record erroneously to conclude "that Best identified Cain by his photograph at the police station the night of the robbery" (dissent, p. 715), can be gleaned from the references at page 715 of the dissenting opinion to a portion of the cross examination of Best on remand, particularly with respect to Best's testimony at the prelimi-

---

record on appeal in all cases. (Emphasis added.)

Fed.R.App.P. 10(a). This rule was complied with and the transcript of the jury arguments, insofar as they referred to any

references by counsel to photographic identification, were, at the court's request, certified by the court reporter under date of December 6, 1971 and hence became available to the court on this appeal.

nary hearing held on March 18, 1969.[7]

In this quotation by the dissent, the first error that is made is to omit the additional colloquy which follows immediately after the quoted testimony, as follows:

QUESTION: Yeah, and on the *second* occasion, did you identify anyone in the photographs?

ANSWER: Yes.

QUESTION: Was it the same individual as you identified the first time?

ANSWER: Yes. Yes.

Tr. 16, emphasis added.

The significance of this additional testimony is that it indicates that there were only *two* identifications, not three as the dissent, in effect, contends, even though it attempts to downgrade the "identification" on January 1st. *See* note 10, *infra.*

A second major error of the dissent is to refer to the preliminary hearing at all and then to rely upon the *partial reference* in the cross examination of Best at the remand hearing to his testimony at the preliminary hearing. On remand counsel cross examined from the transcript of the preliminary hearing but did not introduce the transcript as an exhibit. By court order the transcript has now been lodged with the court and we may refer to it in its entirety.[8] When we do so we see the following cross examination of Best by Attorney Wilhite of the Legal Aid Agency, representing Cain:

Q Now, did there come a later time when you were shown photographs, an *assortment of photographs,* sometime after January 2nd, 1969, by one of the detectives, probably Detective Kane [sic], in the Robbery Section? Do you recall being shown a *group of photographs?*

A Yes, sir.

Q Alright [sic]. Could you state on what date that was?

A No, I couldn't.

Q Was it about—about how long was it after the robbery occurred that you were shown *photographs?*

A They showed me some one night, the night of the robbery, and at a later date. I don't remember the later date.

Q Were you able to identify any of these photographs, or to pick out any of the photographs as being people who were involved in the robbery?

A Yes. I picked out one. I could tell one.

Q And what did you say when you picked out that photograph? What did you tell the detectives?

A That that was him.

Q That was "them"?

A Yeah. Him. Him.

Q Was this the first time or the second time that you looked at the *group of photographs?*

MR. McTAGUE: Well, excuse me. I think he didn't say "the" group; I think "a" group.

BY MR. WILHITE: (Resuming)

Q A *group of photographs.* Was this on the first occasion?

A It was on the first occasion.

Q Yeah; and on the second occasion, did you identify anybody in the photographs?

A Yes.

Q Was it the same individual as you identified in the—the first time?

A Yes. Yes.

Q Did you not, as a fact, tell the —tell Detective Kane [sic] that this strongly resembled the driver of the U-Haul truck? Are those the exact words that you used?

A I don't know who was driving—

---

7. *See* note 6, *supra.*

8. *See* note 6, *supra.* The discussion in note 4, *supra,* is also relevant here.

THE COMMISSIONER: You're accrediting some words in an affidavit that was made by a person other than a witness.

MR. WILHITE: I just want to find out what words he used.

THE COMMISSIONER: Well, you're trying to confront him with some words somebody else used, not his words.

BY MR. WILHITE: (Resuming)

Q Do you know in fact who was the driver of the U-Haul truck?

A No, I do not.

Tr. 8–9–10, emphasis added.

Thus, when the complete interrogation on the subject is considered it is apparent that when Best stated at the preliminary hearing that he identified Cain's photograph "on the first occasion" he was referring to the first occasion that he was shown a *"group of photographs."* This was on January 1st. Best apparently, and justifiably, did not consider his examination on December 31st at the police station of the 500 or 600 pictures in the book form, *i. e.*, photographic albums, as being of a *"group* of photographs." Ten or eleven photographic albums containing 500 or 600 pictures are more frequently referred to as an assortment of photographs or as albums or books. The word "group" hardly applies to such a large number in book form. Best did, however, consider the showing of seven separate photographs on January 1st and of 20 or 25 a week later (Tr. 8) to be two instances when he was shown a *"group* of photographs." Thus there is no impeachment of Best's trial testimony that flows from his testimony at the preliminary hearing. Instead, when the full testimony of the preliminary hearing is noted, it corroborates that view of the testimony which was implicit in the jury arguments of both counsel, *i. e.*, that Best made two, and only two, photographic identifications. The first on January 1st at his home and the second a week later at his office.

It is important to clarify this matter and demonstrate that *actually* there were only two photographic identifications. Then the actions of both counsel at trial in so interpreting the evidence is fully supportable and the attempt by the dissent to claim that "Best identified Cain by his photograph at the police station the night of the robbery," and that there was thus actually testimony of *three* photographic identifications, plainly appears as an unreasonable construction of the testimony and as a construction that is contrary to the contemporaneous interpretation of both trial counsel. Such construction is thus contrary to actual fact and contrary to that of trial counsel.

### VI

Since there were only two identifications, and since it is unreasonable to construe the trial record as indicating that Best identified Cain by photograph at the police station on December 31st, nothing substantial would be gained by sending the case back for another trial. If that were done all the *same testimony* would be repeated on direct and cross examination and there would only be added another statement identical to what Best testified to on direct examination, *i. e.*, that the "first time [he] . . . made a photo identification of this defendant" was at Best's home the day after the robbery. The testimony in this respect is cumulative [9] and is not newly discovered evidence.

9. At the pretrial suppression hearing the trial court found that Best had a source independent of any photographs for his in-court identification. The dissent now attempts to attack this finding by asserting that this finding of independent source did not include any testimony that Best had made an identification at the police station on December 31st, the day of the robbery. But the fact is there was no such identification and the trial judge did hear the equivocal statement to that effect. Thus that statement is not newly discovered evidence. And to the extent that the force of Best's testimony at the pretrial suppression hearing might be said to be weakened by his testimony at trial, where he can be said to have given con-

■ In our view, since neither counsel referred to any police station identification, and in oral argument both counsel called attention only to the identification at the house, made from a *group* of seven photographs the day after the crime, and since *all the testimony points to only two identifications,* and

one identification was admittedly made the very next day, and the identification at work from a *group* of 20 or 25 photographs was unquestioned, any error was harmless.[10]

■■ As to those opinions which refer to the strong weight to be given

tradictory testimony on this point, we have the decision of the trial judge on remand where he essentially came to the same conclusion *after a full review of all the testimony.* On remand it was clearly pointed out that the court was to determine

First, whether the showing of Government photographs at the precinct station on December 31st was so impermissibly suggestive as to require suppression of any photographic identification testimony.

Secondly, whether any of the evidence introduced upon that subject would in any way call for a different ruling on the question of independent source.

Of course, the Court of Appeals is there referring to this Court's ruling on the trial of this matter that there was an independent source for the identification for the witness, Clarence Best.
Tr. 3.

Then after hearing all the testimony on remand that the dissent refers to, and having previously heard and re-read (Tr. 20) all the trial testimony, the trial judge ruled:

On the testimony presented at the time of the hearing on the preliminary motions, I did rule that there was an independent source.

My views have not changed in any way. There is nothing here indicating any impermissibly suggestive identification from the photos exhibited on December 31. Also there was ample proof justifying a determination of independent source for the eyewitness identification by Mr. Best.

The Court finds that no reason has been shown for granting a new trial in this matter.
Tr. 49–50.

10. The dissent attempts to attack Best's photographic identification of Cain at Best's home on January 1st by saying "if we accept *the . . . testimony of the officer* . . . Best did not then identify Cain" (dissenting opinion, p. 714). Of course, we are not required to accept *only* Best's testimony. We have Best's testimony that he positively identified

Cain at that time (Tr. 52). The dissent also argues that since the officer testified that Best picked out the defendant's picture as "strongly resembling" one of the robbers that this is testimony that "Best did not then identify Cain." This is an impermissible deduction from the testimony and the argument is erroneous on two grounds: (1) It fails to give due credit to the extent that Best may have been considered to have identified Cain when he picked out his picture and said it "strongly resembled" the robber. While this is not a positive identification it is an identification, particularly so when it is recognized that Best rejected approximately 556 photographs before he selected this one photo and (2) the dissent also ignores the fact that Best testified both at the trial and at the suppression hearing that he did identify a photo of Cain at his house the day after the hijacking. At the *trial* Best testified that

[T]he police showed [him] some more pictures. . . . At my house.

\*    \*    \*    \*    \*

Q. At this time were you able to identify anyone as one of these hijackers?

A. Yes; I identified one picture.

Q. That was the same person you identify in court today [Defendant Cain]?

A. Yes, it is.
Tr. 52.

At the *suppression* hearing Best testified on interrogation by defense counsel, that he "did see the defendant . . . by photograph? By photograph, yes." (Tr. 6) "Somewhere around the Second of January—First or Second of January. . . . At my house." (Tr. 7) Out of 20 or 25 pictures he "did . . . pick the picture of the man who robbed [him] on the 31st of December 1968? Yes, I did. [He picked out] one . . . of the men who robbed him on December 31st. [He] didn't pick out any others as possible suspects." (Tr. 8).

Q. . . . What did you actually state when you picked out the defendant's picture?

A. I told them that was the one right there. I said, "This picture."

prompt identification of the suspect,[11] even if the jury had considered that an identification had been made on December 31st, an average juror would not see any material difference in persuasive effect between an identification made shortly after a 3 P.M. holdup on one day and one made the very next day. *Cf.* Schneble v. Florida, 405 U.S. 427, 92 S. Ct. 1056, 31 L.Ed.2d 340 (1972). There is only a few hours difference between them. Both are prompt identifications and, in the absence of some showing of basic infirmity, which is not here present, they are entitled to be given almost the same probative effect. We thus agree with the finding on this issue by the trial judge, who re-read the trial testimony before ruling (Tr. 20), that no "reason has been shown for granting a new trial in this matter" (Tr. 50).

Affirmed.

FAHY, Senior Circuit Judge (dissenting):

On the basis of a hearing on defendant's motion to suppress identification testimony expected to be given by the witness Best, one of the occupants of the robbed truck, the District Court held that defendant's rights had not been violated by the challenged photographic identification. The court also held that Best's identification had a source independent of the photographic identification. At the jury trial which followed, however, Best testified about an additional photographic identification of Cain, which had not been the subject of the hearing on the motion to suppress.

He testified before the jury that this photographic identification had taken place at the police station on the evening of the offense, December 31, 1968.

When the above situation came to our attention we remanded the record to the District Court for a hearing to determine whether the showing of photographs at the precinct station on December 31 was so impermissibly suggestive as to require suppression of any photographic identification testimony, and, also, whether any evidence introduced at the remand hearing upon that subject would call for a different ruling as to an independent source for Best's identification of appellant.

We now have the transcript of the hearing on the remand, and also the District Court's order containing its findings that the showing of photographs on December 31, 1968, the evening of the offense, was not impermissibly suggestive, and that the evidence on the remand gave the trial court no reason to change its original ruling on the question of independent source. The court accordingly denied a new trial.

At the remand hearing, however, both Best and the police officers testified that as a matter of fact there was neither a showing to Best of photographs of Cain on December 31, 1968, nor a photographic identification of Cain by Best on that day. Best even denied what the trial transcript, which was read to him, embodied as his trial testimony regarding his identification of Cain on December 31, 1968. Moreover, he also denied that he had testified at

---

Q. Do you now identify the defendant sitting at counsel table as the man who robbed you?

A. Yes.

Tr. 11.

Thus, the basic error of the dissent in this respect is that it fails to give due recognition to the testimony against the accused. On appeal that view of the evidence is to be taken that most strongly favors the Government. The dissent would evade this rule by shifting back and forth between witnesses and between the preliminary hearing, the suppression hearing, the trial and the remand hearing

and have us take the weakest evidence. Following this pattern, the dissent would rely upon the officer's testimony to the exclusion of Best's testimony and then misconstrue the officer's testimony by characterizing it as "no identification." We find that this constitutes impermissible appellate practice and a failure to correctly interpret the testimony.

11. *See, e. g.,* Clemons v. United States, 133 U.S.App.D.C. 27, 40, 408 F.2d 1230, 1243 (1968, en banc), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).

the preliminary hearing, as the transcript of that hearing, also read to him, recorded he had testified, namely, that he was shown photographs the night of the robbery and "I picked out one. I could tell one."

The result is that we have now a case in which the majority of this court take the position that no photographic identification of Cain by Best occurred at the police station the evening of the offense, yet the court affirms the conviction notwithstanding the fact that the jury heard testimony by Best that such an identification of Cain did occur. I cannot agree that Cain's present conviction can stand, founded as it is in part on prejudicial testimony that Best identified him by his photograph the evening of the offense, when, as the court assumes, no such identification occurred.[1]

Undoubtedly very serious crimes were committed; but Lorick, who with Best was also an occupant of the robbed truck, could not identify Cain as a participant. While the District Court found, at the pre-trial hearing on the motion to suppress, that Best's in-court identification had a source independent of any photographic identification, that finding was made on the basis of testimony which did not include Best's testimony about his photographic identification of Cain December 31 at the police station.[2] It is altogether probable that the jury accepted the in-court identification on the basis of that testimony, which cannot be discarded as of no significance; for testimony of an identification shortly after a crime is exceptionally strong evidence.

The majority opinion seeks to meet the problem by taking the position, primarily, that the testimony before the jury sufficiently indicated that there was no photographic identification of

appellant by Best the evening of the offense. The trial transcript in my opinion by no means justifies this position. The following appears from the direct examination of Best before the jury:

Q  Now, sir, on this particular date of December 31, later on that day did there later come a time when you went to Police Headquarters to look at pictures?

A  Yes, I did.

Q  Were you shown a number of pictures of different persons?

A  Yes, I was.

Q  Do you recall from what they were showing you these pictures?

A  No; *we went through the books.*

Q  *Books?*

A  *Yes, sir.*

Q  *Did you see a lot of pictures on that particular day?*

A  *Yes, sir.*

Q  *Were you able to see the person that you now identify in those pictures at that time?*

A  *Yes; I saw one photo of him, yes.*

Q  *I am speaking now of the time you were at Police Headquarters on that particular day?*

A  Yes.

Q  Well, did there come a time that the police showed you some *more pictures?*

A  Yes, they showed me *some more.*

Q   Where was that?

A  At my house.

Q  Now, who showed you these pictures, do you recall?

A  Detective Cain.

Q  Were these pictures of different subjects?

---

1.  The District Court made no findings on the remand whether or not it did occur. The court found, as stated above, no impermissible suggestiveness about such an identification. But there was no testimony at the remand hearing as to possibly impermissible suggestiveness of the identification because the testimony was that the identification never took place.

2.  *And see* note 1, *supra;* and note 3, *infra.*

A   Yes, they was.

Q   At this time were you able to identify anyone as one of these high-jackers?

A   Yes; I identified one picture.

Q   That was the same person *you* identify in court today?

A   Yes, it is.

Q   *Was that the first time* that you made a photo identification of this defendant?

A   *Yes.*

Q   *This was at your home?*

A   *Right.*

On cross-examination the following:

Q   You also testified, I believe, that the first pictures that you were shown were shown to you of possible suspects *at the police station?*

A   *Yes.*

Q   *These were shown to you before another set was shown to you at your home?*

A   *Yes.*

Q   You stated that you identified one picture at *the police station, is that correct?*

A   *Yes, sir.*

Q   Now, was that picture that you identified of this defendant?

A   Yes, it was.

Q   *When was the first time* that you saw a picture of this defendant, Mr. Best?   *Was that at the police station or at your home?*

A   *Both places.*

(Emphasis not in original)

If, as the majority say, he contradicted his testimony of the police station identification he also contradicted his contradiction.   He did not abandon his testimony of either a December 31 identification or that it was the first.   The reasonable interpretation of his direct and cross-examination is that Best identified a picture of appellant at the police

station on the evening of the offense and later at his home.   As to the latter, however, if we accept the far more credible testimony of the officer as to what occurred at the home the "next day," Best did not then identify Cain, as the majority state he did.   Rather, as the officer at trial testified as to the home showing of the pictures:

> "He [Best] picked out the defendant's [picture] as *strongly resembling* one of the subjects involved." (Emphasis not in original)

I find another difficulty in the reason the majority give for putting aside Best's testimony of his police station identification of Cain the evening of the offense.   The court states,

> "The police officer testified that he first showed photographs to Best at his home,"

on the day after the crime.   I find this not to be the officer's testimony before the jury.   The officer testified before the jury simply as to what occurred at the home, without characterizing it as a first showing of photographs to Best. Not only did the home incident, according to the officer, lead to no identification, as pointed out above, but neither this officer, nor any other witness, denied at the jury trial that Best identified a photograph of appellant at the police station.   Such denial came to light in this case only at the hearing on our remand long after the jury trial at which the jury heard Best's testimony that he did identify appellant at the police station the evening of the crime.

The majority rely to some extent, as a fall-back position, upon an identification the next day as offsetting any prejudice from an identification the previous evening, assuming the jury believed the latter identification occurred.   Such reliance is I think not tenable in face of the officer's testimony that the next day Best said only that one of the pictures showed him strongly resembled one of the subjects.[3]

3.   This is aside from the question whether the jury could appropriately rely upon

the identification incident the next day to offset the prejudicial effect of an identifi-

The hearing on our remand also casts another cloud upon the court's basic position of disregarding Best's testimony of an identification of Cain the evening of the crime. The following occurred during Best's examination at that hearing:

Q Mr. Best, do you recall testifying in the small courtroom on the first floor on March 18th, 1969 at a preliminary hearing of this case?

A Yes, I was there.

Q All right.

I am going to read from the official transcript of that hearing and ask you if you were not asked these questions and if you did not make these answers to those questions.

\* \* \* \* \* \*

"QUESTION: Was it about—about how long was it after the robbery occurred that you were shown photographs?

"ANSWER: *They showed me some one night, the night of the robbery and at a later date.* I don't remember the later date.

"QUESTION: Were you able to identify any of these photographs or to pick out any of the photographs as being people who were involved in the robbery?

"ANSWER: *Yes, I picked out one.* I could tell one."

I'm going to skip down to line 21 of that page.

"QUESTION: The group photographs, was this on the first occasion?

"ANSWER: *It was on the first occasion.*

(Emphasis not in original)

On further questioning he denied making these statements which the tran-

script of the preliminary hearing recorded. And I have already pointed out that he also denied on the remand what the transcript contained as to his trial testimony.[4]

It is the view of the majority that in the state of the record a great deal depends upon the use made of the testimony at oral argument. It is said that neither counsel referred to any photographic identification at the police station, and, in the circumstances, the weight of the testimony was for the jury. I agree of course as to the latter. The arguments of counsel to the jury, however, are not a part of the record on appeal. As a consequence we do not have the benefit of appellate counsel's consideration of their significance. Be that as it may, obviously defense counsel would not rely in his argument to the jury upon the testimony of the police station identification of his client the evening of the offense; and it is quite likely government counsel, out of caution or fairness, would not refer to it because of information available to the government, but not to the jury, which indicated doubt that such an identification had occurred. Yet the United States did not disclaim such an identification to the jury. The testimony about it was left for jury consideration; and for all we know the jury relied upon it.

The sum of the matter is that the jury had every right to believe, and may have done so, that Best identified Cain by his photograph at the police station the night of the robbery. While the court now has a basis for holding that such identification did not in fact occur, I do not see how the court can also say that the jury did not have good reason to believe on the basis of the trial testimony that it did occur, resting its verdict at least in part upon that belief.

---

cation which the jury might have believed occurred the previous day at the police station, in the absence of evidence of the circumstances in which the latter occurred which might have been impermissibly suggestive and thus tainted any subsequent identification.

4. All else aside, it is seen that the conviction rests largely on the testimony of a witness who in three respects under oath denied what the transcripts of the pretrial hearing on the motion to suppress and of the preliminary hearing showed he had stated under oath.

To characterize the situation as harmless is for me unacceptable. Our court en banc has pointed out that testimony of any pre-trial identification by a witness is likely to have far more weight with the jury than an in-court identification. Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968) (en banc), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969). The testimony of the stationhouse photographic identification adduced in this case early in the trial carried more weight than the in-court identification. And, in view of the officer's testimony of Best's failure to make an identification of appellant at his home the day following the crime, Best's own testimony of the stationhouse identification was doubtless of more weight with the jury than the officer's testimony that the photograph he picked out the next day at his home "strongly resembled" one of the subjects.

I cannot accept the view that the presence of identification testimony which, in light of subsequent developments, the court considers to have been false, but which *might* well have been the most persuasive of all with the jury, is harmless.[5]

I respectfully dissent.[6]

---

5. I do not ignore the photographic identification made by Best at his place of work about a week after the crime. But its relative strength with the jury would be far less than an identification made the very day of the incident. "The more recent the experience, the better the memory of it." Gardner, The Perception and Memory of Witnesses, 18 Corn.L.Q. 391, 392–95 (1933). And the history of the identification testimony in this case raises the distinct possibility that the last photographic identification prior to trial was not a fresh identification of the perpetrator, but the result of association of the photograph then chosen with one earlier chosen.

6. I now add the following in light of several comments in the majority opinion about my above *dissenting opinion*:

(1) As indicated in my dissent I think it is quite reasonable, especially in light of the testimony on the remand, for the majority to conclude that Best did not identify a photograph of Cain among the photographs shown to him the evening of the offense, although I am not myself certain that he did not. Whether or not he did in fact identify a photograph of Cain that evening, he told the jury that he did. The subsequent attempts by counsel to clarify the situation left his testimony sufficiently ambiguous for the jury to have reasonably concluded that he did identify Cain the night of the offense.

(2) As to footnote 1 of the majority opinion, I was accurate in pointing out that the officer referred to did not testify that he first showed photographs to Best at the latter's home. It is also true, however, as the majority now point out, that the first time this officer showed Best photographs of Cain was at Best's home. The important matter with respect to all of this, it seems to me, is that the home showing of photographs was not the first and that Best testified he identified one photograph at the earlier showing the evening of the offense.

(3) In footnote 6, the majority opinion indicates that my dissenting opinion is incorrect in stating that arguments of counsel to the jury are not a part of the record on appeal. I mentioned this in connection with the absence of the benefit of either counsel's consideration of their significance. The majority state that the transcripts of the arguments, insofar as they refer to photographic identification, were, at the court's request, certified by the reporter under date of December 6, 1971, and hence became available to the court on this appeal. I think my statement was correct. The summations to the jury were not transcribed and made a part of the record filed in this court with the appeal. No order of the court or action of the parties subsequently enlarged the record on appeal to include a transcript of the summations. It appears that after the submission of the case a more informal request was made to the reporter to transcribe the summations and this was done. The judges were supplied with copies. I have stated why I thought counsel in their summations made no reference to an identification the evening of the offense.